UNITED STATES of America, Appellee,

v.

Kenneth L. ESTES,
Defendant-Appellant.

No. 583, Docket 85–1299.

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1985.

Decided June 16, 1986.

Richard I. Rubin, Barre, Vt. (Skinner & Rubin, Barre, Vt., of counsel), for defendant-appellant.

Peter W. Hall and Christopher B. Baril, Ass't U.S. Attys., Rutland, Vt. (George W.F. Cook, U.S. Atty., Rutland, Vt., of counsel), for appellee.

Before VAN GRAAFEILAND, NEWMAN and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Kenneth Estes appeals from a judgment of the United States District Court for the District of Vermont convicting him, after a jury trial before Judge Franklin S. Billings, Jr., of violating 18 U.S.C. § 1623 by testifying falsely before a grand jury concerning his involvement in a theft. For reasons hereafter assigned, we reverse the conviction and remand for a new trial.

Appellant's principal contention on appeal is that testimony of his former wife, Lydia, concerning confidential communications between them was introduced erroneously before both the grand jury and the trial jury. Judge Billings' opinion disposing of appellant's pretrial motions contains a substantially accurate statement of the facts that are pertinent to this issue, *see* 609 F.Supp. 564, and a brief summary will suffice for our purposes.

On February 23, 1982, the Purolator Armored Car Service, for whom appellant worked as a driver-guard, was the victim of a $55,000 theft. Appellant's estranged wife, Lydia, testified willingly before the grand jury and at trial that appellant returned home on the day of the theft carrying a motorcycle bag full of money. In response to Lydia's inquiry, appellant told her that he had taken the money from Purolator. Lydia also testified that she helped appellant count the money and hide a portion of it behind a stair panel. At a subsequent time, she "laundered" some of the money by exchanging small bills for larger ones.

Appellant contends that all of Lydia's testimony should have been excluded on the ground that it involved the disclosure of confidential communications between them. The district court rejected this contention, citing cases from other circuits which hold that "confidential marital communications concerning ongoing criminal activity are not protected by the privilege" and opining that this is likely to be the rule followed by the Second Circuit. 609 F.Supp. at 568. The district court's very statement of the rule shows, however, that it does not apply to the most damning testimony given by Lydia, viz., that appellant brought home a bag of money and told her that he had taken it from the Purolator truck.

■ At that time, the theft of the money had been completed and Lydia's involvement could be only as an accessory after the fact. *United States v. Barlow*, 470 F.2d 1245, 1249, 1252–53 (D.C.Cir.1972). Lydia could not become such an accessory until she knew that the theft had taken place. *Id.* at 1252; 18 U.S.C. § 3. The communication to her of that knowledge was a necessary precursor to her involvement and therefore could not have been made as part of an ongoing joint criminal activity. Under the normal evidentiary rule applicable to confidential marital communications, this portion of Lydia's testimony should not have been admitted. *See Blau v. United States*, 340 U.S. 332, 71 S.Ct. 301, 95 L.Ed. 306 (1951). To the extent that *United States v. Neal*, 743 F.2d 1441 (10th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1848, 85 L.Ed.2d 146 (1985), the case upon which the Government places main reliance, holds to the contrary, we decline to follow it.

■ Although the admission during the trial of Lydia's testimony concerning this confidential communication was sufficiently prejudicial to require the granting of a new trial, its introduction before the grand jury was not so pernicious as to warrant dismissal of the indictment. Absent prosecutorial misconduct, the mere fact that some incompetent or privileged testimony is heard by a legally constituted and unbiased grand jury seldom will invali-

date an indictment returned by it. *United States v. Calandra*, 414 U.S. 338, 349, 94 S.Ct. 613, 620–21, 38 L.Ed.2d 561 (1974); *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed.2d 397 (1956); *United States v. Bein*, 728 F.2d 107, 113 (2d Cir.), *cert. denied*, ——— U.S. ———, 105 S.Ct. 135, 83 L.Ed.2d 75 (1984). This is particularly true where, as here, there was sufficient competent evidence before the grand jury to establish probable cause. *United States v. Williams*, 644 F.2d 950, 952 (2d Cir.1981).

■ Normally, the confidential communication privilege extends only to utterances and not to acts. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361–62, 98 L.Ed. 435 (1954); *United States v. Termini*, 267 F.2d 18, 20 (2d Cir.), *cert. denied*, 361 U.S. 822, 80 S.Ct. 68, 4 L.Ed.2d 66 (1959); *United States v. Long*, 468 F.2d 755, 757 n. 3 (8th Cir.1972). Testimony concerning a spouse's conduct can be precluded upon the spouse's challenge only in the rare instances where the conduct was intended to convey a confidential message from the actor to the observer. *United States v. Mitchell*, 137 F.2d 1006, 1009 (2d Cir.), *aff'd on reh'g*, 138 F.2d 831 (1943), *cert. denied*, 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083 (1944); *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir.1985); *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983); *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir.1976) (per curiam); *United States v. Lewis*, 433 F.2d 1146, 1150–51 (D.C.Cir.1970) (per curiam). The counting, hiding and laundering of the money conveyed no confidential message from appellant to Lydia. Acts do not become privileged communications simply because they are performed in the presence of the actor's spouse. *United States v. Lustig*, 555 F.2d 737, 748 n. 13 (9th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). "Nor does it appear that the essential qualities of communication and confidentiality flow automatically from the fact that the act seen by the other spouse is one that connotes criminal conduct." *United States v. Lewis, supra*, 433 F.2d at 1151. Lydia's testimony

concerning the handling and disposition of the money, much of which was done by Lydia herself, was properly heard by both the grand and petit juries.

■ Assuming for the argument that one or more of appellant's acts which followed the original disclosure of his theft might be construed as additional confidential communications of wrongdoing, we agree with so much of the opinion in *United States v. Neal, supra*, 743 F.2d at 1446–47, as would support the district court's holding that Lydia's testimony concerning those acts was admissible as evidence of joint criminal activity. There are a number of cases, including *In re Grand Jury Subpoena United States*, 755 F.2d 1022 (2d Cir.), *cert. granted sub nom. United States v. Koecher*, ——— U.S. ———, 106 S.Ct. 56, 88 L.Ed.2d 46 (1985), *vacated as moot*, ——— U.S. ———, 106 S.Ct. 1253, 89 L.Ed.2d 103 (1986), which refuse to apply the "partnership in crime" exception to the marital testimonial privilege. However, because an accused cannot invoke marital testimonial privilege to prevent his or her spouse from testifying, *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), those cases have little precedential significance where the spouse chooses to testify voluntarily. Although an accused does have the right to object to spousal testimony which violates confidential communications privilege, a number of circuits, in addition to the Tenth Circuit which decided *United States v. Neal, supra*, refuse to recognize that right where the testimony is not given under compulsion and the communications in question were made in furtherance of unlawful joint criminal activity. *See, e.g., United States v. Sims*, 755 F.2d 1239, 1240–43 (6th Cir.), *cert. denied*, ——— U.S. ———, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985); *United States v. Broome*, 732 F.2d 363, 364–65 (4th Cir.), *cert. denied*, ——— U.S. ———, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984); *United States v. Ammar*, 714 F.2d 238, 257–58 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Mendoza*, 574 F.2d 1373, 1379–81 (5th Cir.), *cert. denied*, 439 U.S. 988, 99

S.Ct. 584, 58 L.Ed.2d 661 (1978). Indeed, our own decision in *In re Grand Jury Subpoena United States, supra,* suggests that a joint participation exception makes sense in the context of the marital confidential communications privilege. 755 F.2d at 1027.

There is sound reasoning behind these holdings. As we stated in *In re Grand Jury Subpoena United States, supra,* 755 F.2d 1022, public policy may militate against subjecting a marriage to the possible disruptive influence of compelled adverse spousal testimony. However, testimonial privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States, supra,* 445 U.S. at 50, 100 S.Ct. at 912 (quoting *Elkins v. United States,* 364 U.S. 206, 234, 80 S.Ct. 1437, 1454, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)). The above-cited courts which recognize the "partnership in crime" exception to the confidential communication privilege believe that greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth. We agree.

For all the reasons above stated, we hold that Lydia's testimony concerning appellant's initial disclosure of his theft should not have been admitted but that it was not error to admit the balance of Lydia's testimony dealing with the handling and disposition of the stolen money.

■ Since we are directing a new trial, we need spend little time on appellant's other claims of error. Proof that appellant and his wife spent substantial sums of money in the purchase of drugs is admissible so long as the district court concludes that its probative value outweighs its prejudicial effect and the jury is instructed concerning the limited purpose for its admis-

sion. *United States v. Sperling,* 726 F.2d 69, 74–75 (2d Cir.), *cert. denied,* 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984); *United States v. Schwartz,* 535 F.2d 160, 165 (2d Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977). Likewise, there is no error in admitting proof of prior statements by Lydia to her attorney which are consistent with her testimony and are offered to rebut the charge against her of recent fabrication and improper motive. Fed.R.Evid. 801(d)(1)(B).

The judgment of conviction is reversed and the matter is remanded to the district court with instructions to grant appellant a new trial.