UNITED STATES of America,
Plaintiff–Appellee,

v.

Russell Thomas PARKER,
Defendant–Appellant.

No. 86–5166.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1987.

Decided Dec. 3, 1987.

---

John Palmer Fishwick, Jr., for defendant-appellant.

Jennie L. Montgomery, Asst. U.S. Atty. (John P. Alderman, U.S. Atty., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation; WINTER, Chief Judge, and WILKINS, Circuit Judge.

POWELL, Associate Justice:

This case presents the question whether certain testimony by the appellant's wife concerning statements made to her by appellant should have been excluded as inadmissible under the confidential marital communications privilege. We think these statements were properly admitted. Moreover, we find that other arguments advanced by appellant do not present substantial questions. Accordingly, we affirm.

## I.

Appellant Russell Thomas Parker was indicted by a federal grand jury in the Western District of Virginia on February 20, 1986. A superseding indictment was returned against him on March 20, 1986. He was charged with various crimes including kidnapping, possession of a sawed-off shotgun, carrying a firearm in the commission of a felony, and transportation of a firearm interstate to commit a felony.[1] On September 11, 1986 a jury convicted him of kidnapping and the three related firearm charges. The district court denied appellant's motion for a new trial on November 5, 1986, and appellant filed a timely notice of appeal.

At trial the Government argued that in October 1982 appellant kidnapped Billy Walters for the purpose of murdering him. Walters was an eighteen-year-old man who lived part of the time in the Parker's trailer. The Government's theory was that appellant and Walters had robbed a convenience store together, and that Parker kidnapped and killed Walters to prevent him from testifying against him. The evidence presented against Parker at trial was that, with the help of his wife Barbara, he tricked Walters into accompanying them across state lines to North Carolina[2] where he shot and wounded him. Parker and his wife then took Walters back into Virginia where Parker killed him with a hammer.[3]

Barbara Parker testified against appellant as to statements he made to her concerning his intentions towards Walters, and other instructions he gave her in furtherance of his plan to kidnap and murder Walters. Appellant claims these were confidential communications protected by the confidential marital communications privilege ("marital privilege"), and should not have been admitted in evidence. He argues that the "joint criminal participation" exception to the marital privilege does not apply in this case because appellant's wife was neither a co-defendant nor a joint participant. He further asserts that, even if this exception applies, it must be narrowly construed. The Government asserts that all the communications testified to by Barbara Parker fell within the joint criminal participation rule, and therefore none of them was protected by the marital privilege.

---

1. These charges were brought pursuant to the following federal statutes: 18 U.S.C. § 1201; 26 U.S.C. §§ 5861(d), 5871; 18 U.S.C. § 924(c); 18 U.S.C. § 924(b) respectively.

2. Russell Parker and his wife lived in Virginia near the North Carolina state border.

3. It appears from the record that appellant shot Walters twice and failed to kill him. Mrs. Par-

ker testified that as appellant had only two shotgun shells, it was necessary to carry Walters back into Virginia where appellant beat him to death.

We are told that appellant was not tried for the murder of Walters because certain crucial evidence was not admissible under the evidentiary rules of the state courts.

## II.

 Information that is privately disclosed between husband and wife in the confidence of the marital relationship is privileged. *Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951).[4] Marital communications are presumptively confidential. *Id.* This Circuit has held, however, that "where marital communications have to do with the commission of a crime in which both spouses are participants, the conversation does not fall within the marital privilege...." *United States v. Broome*, 732 F.2d 363, 365 (4th Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984).[5] This holding reflects a balancing between the public interests in fostering open and honest communications between husband and wife and according a sufficient degree of privacy to marital relationships, on the one hand, and the revelation of truth and the attainment of justice, that also are in the public interest, on the other. As the Second Circuit recently explained, this exception reflects the belief that "greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth." *United States v. Estes*, 793 F.2d 465, 468 (2d Cir.1986).

 Much of Barbara Parker's testimony concerning the appellant consisted of describing his conduct or testifying to statements made by him in the presence of Billy Walters. The marital privilege, generally, extends only to utterances, and not to acts. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 437 (1954);

*United States v. Estes*, 793 F.2d at 467. If the conduct was not intended to convey a confidential message then it is not covered by the privilege. *See, e.g., United States v. Estes*, 793 F.2d at 467; *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir.1985); *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir.1976). Nor does the mere fact that an act has been performed in the presence of a spouse make it a communication. *United States v. Estes*, 793 F.2d at 467; *United States v. Lustig*, 555 F.2d 737, 748 n. 13 (9th Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978). It is also the case that when dealing with a verbal communication, "[t]he presence of a third party negatives the presumption of privacy." *Pereira v. United States*, 347 U.S. at 6, 74 S.Ct. at 361.

 Therefore, neither Mrs. Parker's detailed description of those noncommunicative actions taken by appellant in kidnapping and murdering Walters, nor the incriminating statements made by him in the presence of Walters, were protected by the marital privilege, regardless of whether the joint participation exception applies in this case. Mrs. Parker did, however, testify to certain statements made to her by appellant that fall within the scope of the privilege. For instance she testified that appellant told her in private that "he had to do Billy in" (App. at 101), and that he was buying shotgun shells in order to "blow Billy's head off" (App. at 105). She also testified that appellant told her of his plan to lure Billy to North Carolina by telling him they were going there to steal marijuana (App. at 107). Moreover, appellant instructed her to drive Walters and him into

---

**4.** There are two types of marital privileges: (i) The privilege against adverse spousal testimony and (ii) the privilege protecting confidential marital communications. *See Trammel v. United States*, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). The adverse spousal privilege is vested in the witness spouse, who may neither be compelled to testify nor foreclosed from testifying. *Id.* at 53, 100 S.Ct. at 913. Barbara Parker chose voluntarily to testify against her husband, and therefore the adverse spousal privilege does not apply in this case.

**5.** Six other circuits have agreed with this principle. *See, e.g., United States v. Estes*, 793 F.2d

465 (2d Cir.1986); *United States v. Keck*, 773 F.2d 759, 767 (7th Cir.1985); *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985); *United States v. Neal*, 743 F.2d 1441 (10th Cir.1984), *cert. denied*, 470 U.S. 1086, 105 S.Ct. 1848, 85 L.Ed.2d 146 (1985); *United States v. Ammar*, 714 F.2d 238, 257–58 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Mendoza*, 574 F.2d 1373, 1379–81 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978).

North Carolina, and then to return for him after he had killed Walters.

## III.

Appellant makes three arguments: First, that Mrs. Parker was not a participant in the criminal activity; second, that she was not a co-defendant in this case; and third, that in any event his initial statement to his wife that he had to "do Billy in" (App. at 101) was not within the exception. We address each of these in order.

## A.

█ By her own admission, Mrs. Parker was an active and voluntary participant in the kidnapping and alleged murder of Walters. She: (1) accompanied appellant to an auto repair shop to obtain two shotgun shells he intended to use to kill Walters; (2) accompanied him to North Carolina to choose a place to murder Walters; (3) drove appellant and Walters to this place and dropped them off, so that the car would not have to be left by the side of the road, and she returned in the car an hour later to pick up Parker; (4) helped appellant take Walters, who had been seriously wounded by appellant, back to their home; (5) disconnected the telephone; (6) made sure Walters was dead after appellant beat him with a hammer; (7) helped appellant take Walters' body out of the house; (8) disposed of the bloody mattress; (9) helped clean up the blood stains in the back seat of the car; and (10) assisted in using acid to disfigure Walters body to prevent identification of it. (App. at 102–28). In short, Barbara Parker was intimately involved in the planning, execution, and cover-up of these crimes. In view of the extent of Mrs. Parker's participation, appellant's argument to the contrary is frivolous.

6. *See* supra p. 411.

7. Appellant made a fourth argument that we think is meritless. Relying on *United States v. Sims,* 755 F.2d 1239 (6th Cir.), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985) he argues that, even if the exception applies to this case, many of the communications testified to by Mrs. Parker fell outside its narrow scope

## B.

█ We also find no merit to appellant's claim that because Mrs. Parker was not a co-defendant in this case, the joint criminal participation exception is inapplicable. The cases involving the application of this exception to the marital privilege are uniform in their holdings that it applies to communications that have to do with "the commission of a crime in which both spouses are participants." *United States v. Broome,* 732 F.2d at 365. We have found no legal authority for qualifying the term "participants" to mean participation in a crime in which both spouses are co-defendants, nor is this a logical construction of that term. The policies behind the joint criminal participation exception are concerned with the actual participation by both spouses in a crime, not with their joint prosecution for that crime. The exception arises out of a careful balancing of the policies behind protecting the intimacy of private marital communications and the public policy of getting at the truth and attaining justice. In the context of communications between husband and wife pertaining to their joint criminal activity, the latter interest outweighs the former.[6] Whether the spouse testifying has been indicted and is being prosecuted for his or her participation in the crime is a prosecutorial prerogative that is not material to the policies at issue here.

## C.

█ Appellant also contends that, regardless of the applicability of the joint criminal participation exception to other statements made by him, his initial statement to his wife that he had to "do Billy in" (App. at 101) was made prior to her participation in any criminal activity, and therefore was inadmissible. We disagree.[7]

because they were not facially unlawful. In *Sims,* although the Sixth Circuit recognized a joint criminal participation exception, it limited this exception "to permit admission of only those conversations that pertain to *patently illegal activity.*" 755 F.2d at 1243 (emphasis added). Prior to making this statement the court quoted a law review note for the proposition that " 'open solicitation of a wife's assistance in

To exclude this statement on that ground would be to place form over substance. The basis for the joint criminal participation exception is that the public interests in protecting marital privacy and encouraging open and honest marital communications do "not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or co-conspirator he is creating another potential witness." *United States v. Van Drunen*, 501 F.2d 1393, 1396 (7th Cir.), *cert. denied*, 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974).[8] The public interest in protecting marital communications that pertain to criminal activity and take place in the context of a relationship that has fostered joint criminal participation is greatly diminished. Although protecting marital privacy is important to preserving the integrity of the marital relationship, this interest is outweighed by the need for truth in the circumstances described above.

Appellant's statement that he had to "do Billy in" immediately followed the telephone call from Walters' mother. Mrs. Parker had just lied to Mrs. Walters, telling her that Billy was not at her house, and she had done so with the knowledge that her husband was listening to the conversation. Appellant's communication to his wife concerning his intention to kill Walters was more than a mere attempt to inform her about his intentions. It was also intended to—and in fact did—bring her into the conspiracy. He was relating his plans and simultaneously enlisting her help. Appellant made this statement in the context of requesting his wife to arrange for Walters, who was asleep in their living room, to watch their youngest child while they obtained the shotgun shells used to seriously injure Walters. (App. at 9).

██ We find no basis for making a distinction between marital communications that involve the initial discussion and commencement of joint criminal conduct between spouses, and marital communications made during the joint participation in that criminal conduct. The effect of such a distinction, if any, on the marital relationship would be *de minimis*. Moreover, the policy considerations that support the joint criminal participation exception are equally implicated where from the very outset—as in this case—the spouse is told about the intended kidnapping and murder and she agrees to assist her husband. *Cf. United States v. Broome*, 732 F.2d at 365; *United States v. Van Drunen*, 501 F.2d at 1397. Accordingly, we hold that the joint participation exception to the confidential marital communication privilege extends to statements made in the course of successfully formulating and commencing joint participation in criminal activity.[9]

forging an instrument, in contrast to asking her help in transporting her husband, should be held outside the marital privilege.'" *Id.* (quoting Note, *The Future Crime or Tort Exception to Communications Privileges*, 77 Harv.L.Rev. 730, 734 (1964)). This language is ambiguous as to what is meant by "patently illegal" activity. We think that all communications between a husband and wife that are in any way related to a crime, and made in the course of the spouses' joint planning or participation in that crime, fall within the exception to the marital privilege. To the extent the decision in *Sims* is read as being inconsistent with this view, we disagree with the Sixth Circuit.

8. Although, in *Van Drunen*, this reasoning was used to justify the application of the joint criminal participation exception to the privilege against adverse spousal testimony, it is equally applicable to the confidential marital communications privilege. In fact, the Seventh Circuit had already applied this reasoning to the confidential marital communications privilege in *United States v. Kahn*, 471 F.2d 191 (7th Cir. 1972), *rev'd on other grounds*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

9. In *United States v. Ammar*, 714 F.2d 238, 258 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) the Third Circuit held that "[w]e join the other circuits in holding that communications between spouses pertaining to ongoing *or future* criminal activity, are not protected against disclosure by the privilege for confidential marital communications." (emphasis added). *Accord United States v. Sims*, 755 F.2d at 1243. We think this supports the view that communications between husband and wife that are part of the formulation of their future joint participation in criminal acts are not protected by the marital privilege. To the extent the Second Circuit decision in *United States v. Estes*, 793 F.2d 465, 466 (2d Cir.1986) holds to the contrary, we decline to follow it.

## IV.

Appellant raises a number of other objections involving the alleged admission of hearsay testimony, the admission of a letter written by appellant to his mother-in-law, the sufficiency of the evidence to support his convictions, the admission of testimony concerning his involvement in prior criminal activity,[10] testimony concerning events that took place after the initial kidnapping of Walters, the admission of certain photographs into evidence, and alleged prosecutorial misconduct. If, and to the extent, there was error by the district court in admitting any of the foregoing evidence, the error was harmless beyond a reasonable doubt. The argument that the evidence was insufficient to support appellant's conviction is meritless. Nor was there prejudicial prosecutorial misconduct. One rarely sees a case in which the evidence of appellant's guilt was as compelling as in this case. We think appellant had a full and fair trial.

AFFIRMED.

---

10. The Government argued at trial and on appeal that Parker waived his right of confrontation by killing Billy Walters, thus permitting admission into evidence a statement of Walters that incriminated him and Parker. We reject this contention as an attempt to bootstrap into evidence Walters' statement by assuming that Parker caused his death. The statement is admissible, however, under Fed.R.Evid. 804(b)(3) as a statement against interest. The statement in question fully implicated Billy Walters in the convenience store robbery, thus tending to expose him to criminal liability.