**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Barry Mark HALL, Defendant–Appellant.**

No. 92–5215.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1992.

Decided March 5, 1993.

## OPINION

K.K. HALL, Circuit Judge:

Barry Mark Hall was convicted of conspiracy to distribute cocaine (21 U.S.C. § 846) and distribution of cocaine (21 U.S.C. § 841). Because Hall was improperly cross-examined, we reverse his convictions and remand for a new trial.

### I.

Barry Mark Hall was indicted for conspiracy to distribute cocaine, distribution of cocaine, and possession of a firearm in furtherance of a drug crime. Following his arrest, his wife, Tammie Sue Bryant Hall, allegedly provided inculpatory information to the government. According to a "summary" of a "Regional Narcotics Task Force Debrief," Mrs. Hall told Special Assistant United States Attorney Tim McAfee [1] that she had witnessed Hall and others using cocaine. Additionally, she revealed the content of several conversations in which she and her husband discussed his drug use and his inevitable indictment.

Before trial, Mrs. Hall signed an affidavit indicating that she would assert her marital privilege against being compelled to testify against her husband.[2] The government did not attempt to call Mrs. Hall as a witness. However, during the cross-examination of the defendant, the prosecutor stated that he possessed a statement made by Mrs. Hall. The prosecutor then held the "statement" in his hand and read portions of it during the cross-examination.

Hall was convicted on the conspiracy and distribution counts, but was acquitted of the firearms charge. Immediately following the trial, Hall's counsel uncovered information casting doubt on the mental competency of one of the jurors ("Juror X").[3] Hall moved for a new trial, and the district court held several *in camera* hearings to determine Juror X's competency. After reviewing the evidence, the district court de-

Richard Dudley Kennedy, Sturgill, Mullins & Kennedy, Wise, VA, argued for defendant-appellant.

E. Montgomery Tucker, U.S. Atty., Jerry W. Kilgore, Sp. Asst. U.S. Atty., Abingdon, VA, on brief, for plaintiff-appellee.

Before WIDENER, HALL, and HAMILTON, Circuit Judges.

---

**1.** McAfee was a state prosecutor appointed as a Special Assistant United States Attorney for this case.

**2.** Because of its belief that the Halls were planning to divorce, the district court reserved ruling on whether Mrs. Hall could assert the privilege.

**3.** We will follow the district court's decision to respect this juror's privacy by referring to him as "Juror X."

termined that Juror X was competent at the time of Hall's trial. Hall was then sentenced to 51 months incarceration, to be followed by three years of supervised release, and fined $3,000. Hall appeals.

## II.

### (Juror competency)

■■■ A defendant is constitutionally entitled to mentally competent jurors. *Jordan v. Massachusetts*, 225 U.S. 167, 176, 32 S.Ct. 651, 652, 56 L.Ed. 1038 (1912) (due process implies a mentally competent tribunal); *United States v. Rucker*, 557 F.2d 1046, 1047–48 (4th Cir.1977) ("[m]ental incapacity to serve, no less than the existence of bias, strikes at the very fitness of a venireman to sit as a juror.") (footnote omitted); 28 U.S.C. § 1865(b)(4). To enforce this right, the jury's verdict must be set aside if the defendant presents "clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service." *United States v. Dioguardi*, 492 F.2d 70, 78 (2d Cir.1974), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *United States v. Vargas*, 606 F.2d 341 (1st Cir.1979) (same). The district court's determination that X was competent is a finding of fact that may not be overturned by this Court unless it is clearly erroneous.

■■ During the post-trial hearings, Hall produced evidence that Juror X had been involuntarily committed nine times; had been diagnosed as schizophrenic by thirteen different psychiatrists and by the Virginia Department of Mental Health and Mental Retardation; had experienced episodes of extremely violent behavior, including attempts to kill his family members; had a history of refusing medication, and had been certified as disabled ("unable to engage in any substantial gainful activity") by his present treating physician, Dr. J. Nuri Yong. Hall also presented expert witness testimony regarding the general effects of mental illness.

The government's evidence of Juror X's competency included proof that X's diagnosis had been changed from schizophrenia to bipolar disorder; testimony from X's wife, and X's sister, and Sharon Taylor,[4] that X did not suffer an occurrence of manic behavior during the trial; Taylor's opinion that she had no concerns regarding X's competency as a juror; and a letter from Dr. Yong stating that X had been stable for a long time and that his condition would not have "[a]ffected his ability to enter competent judgment."

Hall conclusively proved that Juror X had not been mentally competent at all points in the past. However, Hall's evidence was much weaker on the critical issue: Juror X's competency during the trial. *United States v. Dioguardi*, 492 F.2d at 80 (2d Cir.1974) (incompetency must be nearly contemporaneous to the trial).[5]

For example, Hall heavily relies on the testimony of Dr. Pierce Nelson, X's former treating physician. Dr. Nelson testified that X was a schizophrenic and that schizophrenics should always be disqualified from jury service. However, Dr. Nelson had not examined X since 1983, and he admitted that X's current treating physician would be in a better position to testify concerning X's current condition. Finally, he believed that X's behavior would be so affected by his condition that the condition would have been apparent to the court (it had not been).

Each side presented strong, conflicting evidence. However, after reviewing all of the evidence, we are not left with the "definite and firm conviction" that Juror X was incompetent during Hall's trial. Therefore, the district court's factual finding was based upon a permissible view of the evidence and is not clearly erroneous. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**4.** Taylor was a social worker who worked closely with X.

**5.** We note that this problem would be obviated if the questionnaire asked more pointed questions, e.g. whether a juror "had *ever* suffered a mental infirmity that would prevent him or her from serving as a juror."

## III.

### *(Improper cross-examination)*

### A. *Mrs. Hall's "statement."*

Following her husband's arrest, Tammie Sue Bryant Hall was interviewed by Prosecutor McAfee. According to an "Interview Summary," apparently prepared by McAfee, Mrs. Hall provided inculpatory information that, if admissible, would have devastated Barry Hall's defense. For example, the summary states that Mrs. Hall repeatedly witnessed Hall and others using cocaine and had found cocaine inside their car and house. The summary also details several conversations between Mrs. Hall and her husband in which they discussed his drug use and his belief that he would be indicted.

As we stated earlier, Mrs. Hall signed a pretrial affidavit asserting her privilege against being compelled to testify against her husband, and the district court reserved its ruling on whether Mrs. Hall could validly assert the privilege.[6] The government did not call Mrs. Hall as a witness.

Hall testified in his own defense. During his cross-examination, McAfee immediately began inquiring into the substance of Mrs. Hall's "statement."[7] Significantly, it is apparent from the record and oral argument that McAfee held Mrs. Hall's "statement" in his hand and read from it while questioning Hall.

Q: Mr. Hall, isn't it true that your wife caught you using cocaine as early as 1987?

A: No, she didn't.

Q: In the kitchen, didn't she?

. . . .

Q: She caught you using cocaine on the kitchen table, and you kicked her out of the house?

Hall's counsel objected to all questions concerning Mrs. Hall as lacking a foundation, as being outside the scope of the direct, and because Mrs. Hall had not testified. Prosecutor McAfee then stated, in the jury's presence, *"I have a foundation for it. I have a three page statement from Ms. Hall."*

The district court overruled Hall's objection and McAfee continued to question Hall about Mrs. Hall's "statement":

Q: In fact, isn't it also true, Mr. Hall, that you even brought your wife with you for a cocaine deal[?]

. . . .

Q: In fact, after Debbie Greer got busted, you were so concerned about that and what Debbie Greer was going to say about her relationship with you *that you shared that concern and concerns with your wife, Tammie Hall?*

Hall's objections were overruled. McAfee then continued to ask Hall about other statements that he had made to his wife. McAfee then said, in the jury's presence:

Mr. Hall let me show you what's marked as Government's Exhibit 16, . . . *This is a summary of an interview with Mrs. Tammie Hall* and ask if you'd read over that, please.

Hall's counsel then requested a bench conference. At this conference, the court asked, "Well, you've already asked him about everything that's in that statement

---

**6.** *See* Weinstein & Berger, *Weinstein's Evidence,* § 505[02] at 505–15 (1992) (although the cases are in conflict, the trend is to look to the length of the separation as a guide to determining whether the privilege's application would promote marital harmony).

**7.** We note the government's inconsistent positions regarding what is, and is not, a witness statement. In a separate episode during the trial, the government refused to produce similar summaries of witness interview notes pursuant to Fed.R.Crim.P. 26.2 on the ground that they

were not "statements." Although we agree with the district court's ruling that a summary of a witness interview is not a statement, *see United States v. Foley,* 598 F.2d 1323, 1339 (4th Cir. 1979), *cert. denied,* 444 U.S. 1043, 100 S.Ct. 727, 62 L.Ed.2d 728 (1980) (interview notes that are not verbatim nor approved by the witness are not "statements"), the government cannot have it both ways. However, for the purposes of this discussion we will refer to the summary of Mrs. Hall's interview as a "statement."

already, I guess, but what are you fixing to do with it?"

 ] There were numerous deficiencies with this cross-examination. We do not know, short of accepting McAfee's word on the matter, whether Mrs. Hall was ever interviewed. Even if a statement was given by Mrs. Hall, we have no knowledge of the conditions under which it was given or whether the summary of it was materially accurate. The summary is not signed or otherwise adopted by Mrs. Hall. It was inadmissible as hearsay thus violating Fed. R.Evid. 802, and perhaps, the Confrontation Clause as well, since Hall had no opportunity for cross-examination. *See Goldsmith v. Witkowski,* 981 F.2d 697 (4th Cir. 1992) (reversing conviction on ground that prosecution introduced hearsay evidence in violation of the Confrontation Clause).

 ] Use of the statement also violated both Mr. and Mrs. Hall's marital privilege.[8] Mrs. Hall had asserted her privilege not to testify against her husband, and the government did not call her to the stand in order to test her assertion of the privilege.[9] Instead, to avoid risking an adverse ruling on this issue, the prosecutor simply identified the statement in front of the jury, and then read it in open court under the guise of impeachment. McAfee's conduct also violated Hall's privilege by divulging marital communications.[10]

Protections against the use of privileged and inadmissible evidence would be of little benefit if the prosecutor were allowed, under the guise of "artful cross-examination," to tell the jury the substance of inadmissible evidence. *Goldsmith,* 981 F.2d at 704 (reversal required when prosecution presented inadmissible evidence through the "back door"); *United States v. Check,* 582 F.2d 668, 683 (2d Cir.1978) (reversal based on prosecutor's "transparent" introduction of inadmissible hearsay through "artful" cross-examination, "the government received the benefit of having, in effect, an additional witness against [the defendant] while simultaneously insulating [the witness] from cross-examination ..."); *see also United States v. Simtob,* 901 F.2d 799, 805 (9th Cir.1990) (reversal required because "[p]rosecutor's discussion of [prosecution witness's] remarks in relation to earlier statements which were not before the jury (and of which the jury could assume only the government was aware) could have implied that the government had certain knowledge whether the [witness] was in fact telling the truth."); *United States v. Morlang,* 531 F.2d 183, 190 (4th Cir.1975) (rejecting prosecution's attempt to call a witness solely in order to impeach through hearsay); *United States v. Carroll,* 678 F.2d 1208, 1209 (4th Cir. 1982) (Defendant has a Fifth Amendment right not to be convicted except on the basis of evidence adduced against him).

This case presents an egregious example of "artful" cross-examination. McAfee repeatedly told the jury that he possessed a statement given by the defendant's wife. He then proceeded to read the statement to the jury under the guise of cross-examining Hall. In effect, the government gained extremely damaging inculpatory testimony

8. There are two types of spousal privilege: (1) the privilege against "adverse spousal testimony" which prevents a person from being compelled to testify against his or her spouse. This privilege is held by the testifying spouse; and (2) the "marital communications" privilege which *protect information disclosed between husband and wife in the confidence of the marital relationship.* This privilege is held by either spouse. *United States v. Parker,* 834 F.2d 408, 411 (4th Cir:1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 279 (1988).

9. Because Mrs. Hall had asserted her privilege, this issue would have to be raised outside of the jury's presence. *See United States v. Thomas John Morris,* 988 F.2d 1335 (4th Cir.1993) (re-

versible error for government to comment upon spouse's previous invocation of the privilege); *United States v. Chapman,* 866 F.2d 1326 (11th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989) (error to call the defendant's spouse to the stand in order to force him or her to assert the privilege).

10. Of course, Hall had an obligation to testify truthfully on cross-examination. *See United States v. Havens,* 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980) ("[A]rriving at the truth is a fundamental goal of our legal system.") However, even when the government believes a witness is lying, its methods of impeachment are constrained by the requirements of the Confrontation Clause.

that could not have been introduced into evidence. The government's use of Mrs. Hall's unauthenticated statement violated Fed.R.Evid. Rule 802 ("Hearsay is not admissible except as provided by these rules...."), both Mr. and Mrs. Hall's spousal privileges, and introduced testimony of a witness who could not be cross-examined as required by the Confrontation Clause.

### B. *Curative instruction.*

After the close of the evidence, the court offered the following curative instruction:

> During [Hall's cross examination] the Government Counsel asked the defendant if he made certain statements to his wife, and the defendant denied making such statements. The jury is instructed that if no evidence has been shown that such statements were made by the defendant, the jury shall make no such inference that such statements were made simply because the questions were asked, and shall disregard any and all questions asked relating to statements allegedly made to Tammie Hall, the wife of the defendant.

■ The normal presumption is that the jury will follow a curative instruction. *Greer v. Miller*, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 3109 n. 8, 97 L.Ed.2d 618 (1987). However, this presumption cannot apply when the curative instruction fails by its own terms to address the error.

■ This instruction addresses the erroneous admission of statements violating Barry Hall's privileged marital communications. It completely ignores the other highly prejudicial questions based upon Mrs. Hall's statement: that she had "caught" Hall using cocaine, that Hall had repeatedly used cocaine inside their house, and that Hall had taken his wife with him to drug deals. Because the instruction failed to address the jury's exposure to prejudicial statements that could not have been introduced into evidence, it failed to cure the error introduced by McAfee's wrongful cross-examination.

### C. *Harmless error analysis.*

■ Finding Hall's cross-examination improper and the curative instruction insufficient, we must now review for harmless error. *Goldsmith v. Witkowski*, 981 F.2d at 703; Fed.R.Crim.P. 52(a). We conclude that this error was harmful and that Hall's convictions must be reversed.

First, the impermissible aspects of the cross-examination did not concern subsidiary matters, but, rather, the essence of the prosecution's case: whether Hall had possessed and distributed cocaine. Second, the cross-examination was of the defendant himself. This factor distinguishes this case from others where less consequential witnesses were improperly cross-examined. *See United States v. Siers*, 873 F.2d 747, 750 (4th Cir.1989) (conviction affirmed where government improperly cross-examined 2 of 14 cumulative character witnesses). Third, this was not a single isolated incident: McAfee repeatedly asked Hall impermissible questions. Fourth, this was a hotly contested trial; Hall was acquitted of one of the three counts (use of a firearm in a drug trafficking crime). Finally, we believe that the jury was especially likely to give great weight to the statements of the defendant's spouse.

### IV.

### *(Prosecutorial misconduct)*

■ The role of the federal prosecutor is not to seek a conviction at any cost. Instead, as a representative of the United States, the prosecutor's interest

> in a criminal prosecution is not that it shall win a case, but that justice shall be done.... It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

During the defense's closing argument, Hall's counsel argued that the government's case was weakened by the lack of any undercover drug buys from Hall. In

rebuttal, Prosecutor McAfee responded with the following statement:

> You wonder why there weren't any undercover purchases [from] Mark Hall? Well, we didn't have a police officer who was female who was willing to go to bed with him. That's why there weren't any undercover purchases of cocaine from Mark Hall.

Hall also challenges other improper remarks, including McAfee's statements that Hall failed to provide for his family and comments about a defense witness's desire to secure advice from Hall's counsel before she testified.

We will not address the government's closing argument at great length; placing Hall's marital fidelity into issue was highly improper.[11] *Id.* ("improper suggestions, insinuations, and, especially assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."); ABA Standards for Criminal Justice 3–5.8(c) (2d ed. 1980) ("The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.") (cited with approval by the Supreme Court in *United States v. Young*, 470 U.S. 1, 8 n. 5, 105 S.Ct. 1038, 1042 n. 5, 84 L.Ed.2d 1 (1985)). The only issue is whether Hall waived the error by failing to object.[12] Having reversed the case on an alternate ground, we decline to address this issue.

## V.

Hall's convictions are reversed, and the case is remanded for a new trial.

REVERSED AND REMANDED.

---

11. Unfortunately, in its brief, the government attempts to defend its closing argument on the merits.

12. The plain error exception to the contemporaneous objection requirement, Fed.R.Crim.P. Rule 52(b), allows an appellate court to correct "plain errors or defects affecting substantial rights" even if they were not brought to the trial court's attention. Rule 52(b) is applied "spar-

ingly" and saves only "particularly egregious errors" in those circumstances "in which a miscarriage of justice would otherwise result." *Young*, 470 U.S. at 15, 105 S.Ct. at 1046, quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *United States v. Depew*, 932 F.2d 324 (4th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 210, 116 L.Ed.2d 169 (1991).