UNITED STATES of America,

v.

Baboolal MOHANLAL, Defendant.

No. 93 Cr. 682 (LMM).

United States District Court,
S.D. New York.

Oct. 27, 1994.

Michael F. Bachner, Roger Bennet Adler, Isabelle A. Kirshner, David B. Levitt, Federal Defenders, New York City, for Baboolal Mohanlal.

Andrea L. Labov, U.S. Attys. Office, S.D.N.Y. New York City, for U.S.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

Defendant moves, pursuant to Fed. R.Crim.P. 33, for a new trial. Defendant was convicted, after a jury trial, of sending threatening communications through the mails. 18 U.S.C. § 876. Defendant asserted, and the jury rejected, the defense that "at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a).

### I.

Defendant's first two arguments are directed to the testimony of Rev. Walter Enquist concerning defendant's state of mind during the period in which the threatening communications were made, most specifically to Rev. Enquist's following answers to the following questions, to which an objection was made:

Q. Rev. Enquist, do you have a[n] opinion as to whether the defendant knew the difference between right and wrong during the summer of 1992?

MR. ADLER: Objection.

THE COURT: Overruled.

A. Yes.

Q. What is that opinion?

A. That he knows the difference between right and wrong.

Q. What is your basis for that opinion?

A. Well, knowing him and knowing something about psychology.

Defendant argues, first, that the testimony violated the clergy-communicant privilege, and, second, that the testimony lacked a sufficient foundation.

### A.

■ It is clear that one of the privileges to be recognized under Fed.R.Ev. 501 is the clergy-communicant privilege. *See, generally, In re Grand Jury Investigation,* 918 F.2d 374, 378–85 (3d Cir.1990).

■ The privilege is generally said to protect "communications." *Id.* at 377 (privilege protects "communications" to members of clergy); *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980) ("The privilege[ ] between priest and penitent ... limit[s] protection to private communications."); *see also* N.Y.Civ.Prac.L. & R. § 4505 (clergyman may not disclose "confession or confidence").

The parties have not cited, nor has the Court found, binding authority concerning the issue whether Rev. Enquist, in giving his conclusion that defendant "knows the difference between right and wrong" (which the Court must assume is based on the totality of his contacts with defendant including, *arguendo,* confidential communications within the privilege) gave testimony precluded by the privilege. The Court holds, on the facts of this case, that he did not.

The most helpful case is *United States v. Estes,* 793 F.2d 465 (2d Cir.1986), in which the court considered a claim of the confidential marital communication privilege, of which the Supreme Court has said that "[n]o other testimonial privilege sweeps so broadly." *Trammel,* 445 U.S. at 51, 100 S.Ct. at 913.

In *Estes,* the court noted that "[n]ormally, the confidential communication privilege extends only to utterances and not to acts. Testimony concerning a spouse's conduct can be precluded upon the spouse's challenge only in the rare instances where the conduct was intended to convey a confidential message from the actor to the observer." 793 F.2d at 467 (citations omitted).

■ Rev. Enquist did not testify to any communication to himself on the part of defendant, even to a communication of the sort described in Fed.R.Ev. 801(a)(2) as "nonver-

bal conduct of a person, if it is intended by the person as an assertion." His testimony concerning his conclusion as to defendant's mental state, although no doubt based upon communications to him by defendant, as well as observations of defendant, including observations as to the manner of defendant's communications, did not reveal, or suggest, the content of any communication by defendant. Rev. Enquist testified to no "utterances" or "conduct [ ] intended to convey a confidential message from the actor to the observer." 793 F.2d at 467.

Accordingly, the Court finds that Rev. Enquist did not testify in violation of the clergy-communicant privilege, and that his challenged testimony was properly admitted.

### B.

Further, a sufficient foundation was laid for Rev. Enquist's challenged testimony. Defendant argues that "it must be shown that the witness has acquired the requisite educational training and experience to equip the witness to [offer opinion testimony]." (Adler Aff., July 14, 1994, ¶ 6.) However, the argument continues, "[t]he witness was shown neither to be a 'mind reader' nor a trained psychologist or psychiatrist. There was no proof that he had ever been qualified in any Court in any jurisdiction to testify as an expert on non-religious matters relating to mental state." (Id., ¶ 8.)

The argument, in the Court's view, misses the point of Fed.R.Ev. 701. Under that rule, Rev. Enquist was "not testifying as an expert," which implies that the qualification "by knowledge, skill, experience, training, or education," Fed.R.Ev. 702, required of one who is testifying as an expert, was not required of him. He had had, however, not insignificant personal contact with defendant, so that his opinion was "rationally based on the perception of the witness." Fed.R.Ev. 701(a). Further, in view of the conflicting expert testimony concerning defendant's mental state at the relevant time, Rev. Enquist's testimony could be "helpful to . . . the determination of a fact in issue." Fed.R.Ev. 701(b). The weight of Rev. Enquist's testimony was, of course, for the jury to judge.

### II.

Defendant's final argument is based upon the government's possession and use (by making it available to the government's expert witness) of a transcript of testimony given by defendant to a Bronx County grand jury. New York Criminal Procedure Law § 190.25(4)(a) prohibits the disclosure of "the nature or substance of any grand jury testimony" except "in the lawful discharge of [specified persons'] duties or upon written order of the court." The government has not shown that the grand jury transcript was obtained in a manner provided for in the statute. Assuming, *arguendo*, that the transcript was improperly obtained by the government from the Bronx County District Attorney, the Court adheres to its reasons stated at trial for allowing the testimony of Dr. Siegel, notwithstanding that among the materials he reviewed and upon which he based his testimony was the transcript at issue.

It would seem to me if it was turned over illegally to any federal agency, that it was the responsibility of presumably the Bronx County District Attorney to obtain the court order. Secondly, the violation you cite is a violation of a statute, and I'm not aware of any exclusionary rule, and I'm not going to create one because I don't think it's my place to create exclusionary rules, for illegal possession that depends not on the violation of the Fourth, Fifth or Sixth Amendment, but of a state statute. (Transcript 465–66.) [1]

### III.

For the foregoing reasons, defendant's motion is denied. Sentencing will be scheduled for the earliest possible date. Defendant has requested a conference with the Court, which will be held immediately prior to sentencing.

SO ORDERED.

---

1. The facts of this case, however, indicate that it would be advisable for the United States Attorney to assure itself that materials such as state grand jury minutes received by it have been properly obtained, and to make adequate records of the manner in which they were obtained.