UNITED STATES of America,
Plaintiff-Appellee,

v.

Clarence Samuel ROBINSON (84–5140),
Charles T. Cornett (84–5141), James Harold Coldiron (84–5158), Defendants-Appellants.

Nos. 84–5140, 84–5141 and 84–5158.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 8, 1985.

Decided May 31, 1985.

Otis Doan, Jr. (argued), Doan & Melvin, Harlan, Ky., for defendant-appellant in No. 84–5140.

Louis DeFalaise, U.S. Atty., Lexington, Ky., R. Michael Murphy (argued), for plaintiff-appellee.

William A. Young (argued), Greenebaum, Young, Treitz & Maggiolo, Frankfort, Ky., for defendant-appellant in No. 84–5141.

Arthur L. Brooks (argued), Lexington, Ky., for defendant-appellant in No. 84–5158.

Before LIVELY, Chief Judge, ENGEL, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendants-appellants, Charles Cornett, James Coldiron, and Clarence Robinson, appeal from a jury verdict finding them guilty of violating Sections 1962(c) and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982). On appeal, appellants individually and collectively raise numerous assignments of error. After careful consideration of each contention, we affirm.

The events relevant to this appeal occurred between July and December 1978 in the "dry" county of Harlan, Kentucky and the "wet" city of Cumberland. During this time, Charles Cornett was a state district court judge in Harlan, James Coldiron was an insurance salesman in Harlan, and Clarence Robinson was an employee of Ann's Liquors, a licensed alcoholic beverage retailer in Cumberland. The government alleged that the defendants entered into a conspiracy to sell contraband liquor[1] confiscated in Judge Cornett's jurisdiction to Ann's Liquors and share the proceeds. In order to effect this scheme, the defendants enlisted the aid of James Saylor, the Harlan County agent of the Kentucky Alcohol Beverage Control Department (ABC).

The conspiracy was set in motion by Judge Cornett turning the confiscated liquor over to Agent Saylor; Agent Saylor then transported surreptitiously the contraband to Ann's Liquors and sold the alcohol to Clarence Robinson at a reduced rate; Ann's Liquors subsequently marketed the liquor to the general public. In order to prevent the scheme from being uncovered, Judge Cornett made the court records reflect that the contraband had been destroyed. Although the defendants knew that Agent Saylor was a member of the ABC, they believed that he was using his position to further the conspiracy. Agent Saylor, however, was cooperating with the Federal Bureau of Investigation and recording his telephone and personal conversations with the defendants. According to the government, these taped conversations establish that four separate sales of contraband alcohol were made to Ann's Liquors and that Agent Saylor received payments of $1,000, $630.00, and $300.00 for his participation in the scheme. The defendants were subsequently indicted for engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (1982) and conspiring to engage in a pattern of racketeering activity in contravention of 18 U.S.C. § 1962(d) (1982).

The first trial of the defendants resulted in a hung jury. Upon retrial, the defendants were convicted on all counts; however, because transcripts of tape recordings made by Agent Saylor were admitted improperly into evidence, this Court reversed the convictions. *United States v. Robinson,* 707 F.2d 872 (6th Cir.1983). At a third trial, the defendants were again convicted on all counts. This appeal ensued.[2]

Section 1962(c) prohibits any enterprise which affects or is engaged in interstate commerce from conducting its affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c) (1982). In order to establish a "pattern of racketeering activity" two acts of racketeering activity, which is defined as any act chargeable un-

---

1. In Kentucky all unlawfully possessed alcoholic beverages are deemed contraband. Ky.Rev. Stat.Ann. § 244.180(3) (Baldwin Supp.1984).

2. The facts of this case are further elaborated upon in our prior opinion. *United States v. Robinson,* 707 F.2d 872, 874–75 (6th Cir.1983).

der state law and punishable by more than one year in jail, 18 U.S.C. § 1961(1) (1982), must be proven, 18 U.S.C. § 1961(5) (1982). Moreover, conspiring to conduct an enterprise's affairs through a pattern of racketeering activity is unlawful. 18 U.S.C. § 1962(d) (1982). In this case, the government alleged a pattern of racketeering based upon appellants' payments to Agent Saylor; each payment constituted bribery of a public servant under Kentucky law.[3]

## I. Effect on Interstate Commerce

 Initially, appellant Robinson contends that the government failed to establish that the defendants' conduct affected interstate commerce.[4] 18 U.S.C. § 1962(c) (1982) (enterprise's activities must "affect, interstate or foreign commerce"). The law is well settled that for purposes of § 1962(c) the criminal enterprise need only have a minimal impact upon interstate commerce. *E.g., Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1289 (7th Cir.1983); *United States v. Allen*, 656 F.2d 964, 964 (4th Cir.1981) (per curiam); *United States v. Rone*, 598 F.2d 564, 573 (9th Cir.1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). In the present case, the parties stipulated that the alcohol sold by the appellants to Ann's Liquors was manufactured out of state. In our view, this is a

sufficient impact upon interstate commerce for purposes of Section 1962(c). *Cf. United States v. Richardson*, 596 F.2d 157, 160–61 (6th Cir.1979) (manufacturing of alcohol outside of state sufficient nexus for purposes of the Hobbs Act). Accordingly, we reject Robinson's contention that the conspiracy in question did not affect interstate commerce.

## II. Admission of the Tape Recordings

 Appellants Coldiron and Robinson challenge the district court's admission into evidence of approximately twenty-five allegedly unintelligible tape recordings of conversations between Agent Saylor and the defendants. Tape recordings are generally admissible unless the incomprehensible portions of the tapes are so substantial as to render the recordings as a whole untrustworthy. *E.g., United States v. Terry*, 729 F.2d 1063, 1068 (6th Cir.1984); *United States v. Slade*, 627 F.2d 293, 301 (D.C.Cir.), *cert. denied*, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *United States v. Cooper*, 365 F.2d 246, 249–50 (6th Cir.1966), *cert. denied*, 385 U.S. 1030, 87 S.Ct. 760, 17 L.Ed.2d 677 (1967). Further, the decision to admit tape recordings into evidence rests with the sound discretion of the district court judge. *E.g., United States v. Reed*, 647 F.2d 678, 688 (6th Cir.),

---

**3.** A person commits bribery of a public servant when they confer "any pecuniary benefit upon a public servant" intending to influence his judgment. Ky.Rev.Stat.Ann. § 521.020(1)(a) (Baldwin 1984). A "public servant" includes any employee of the state. Ky.Rev.Stat.Ann. § 521.-010(1)(a) (Baldwin 1984). A conviction for bribing a public servant is a class d felony, Ky.Rev.Stat.Ann. § 521.020(4) (Baldwin 1984), punishable by incarceration for one to five years in a state penitentiary or reformatory, Ky.Rev.Stat.Ann. § 532.020(1)(a) (Baldwin 1984).

Appellants contend that, as a matter of law, they were entitled to the "extortion" defense to bribery of a public servant. Ky.Rev.Stat.Ann. § 521.020(2) (Balwin 1984). Under Kentucky law, if the public servant uses extortion to obtain the pecuniary benefit, a defendant is entitled to the defense of extortion. Ky.Rev.Stat. Ann. § 521.020(2) (Baldwin 1984). The Kentucky Supreme Court, however, has noted that this defense "is designed for the situation in which members of the public are preyed upon

by avaricious public officials whose services they are entitled to have but may not be able to get without passing along an extra sweetener on the side." *Schaefer v. Commonwealth*, 622 S.W.2d 218, 220 (Ky.1981); *see also* Ky.Rev.Stat. Ann. § 521.020 1974 commentary (Baldwin 1984) (indicates extortion defense analog to the entrapment defense). The appellants have, in this case, failed to introduce any evidence tending to show that Agent Saylor preyed upon them or shook them down. *See Schaefer v. Commonwealth*, 622 S.W.2d 218, 220 (Ky.1981). Thus, we decline to hold as a matter of law that the appellants were entitled to the defense of extortion.

**4.** We note that only the criminal enterprise must affect interstate commerce—not the conduct of each individual defendant. *E.g., United States v. Groff*, 643 F.2d 396, 400 (6th Cir.), *cert. denied*, 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 103 (1981).

*cert. denied,* 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981); *United States v. Carter,* 613 F.2d 256, 261 (10th Cir.1979), *cert. denied,* 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 24 (1980); *United States v. Enright,* 579 F.2d 980, 988 (6th Cir.1978). After reviewing the challenged tapes, we conclude that their admission was proper.[5]

The bulk of the tapes admitted into evidence contained phone conversations between Agent Saylor and the defendants. These conversations were clear and intelligible. Several of the tapes, however, which were made by Saylor while in the courthouse in which Judge Cornett's chambers was located and Coldiron's office, contained incomprehensible portions. Background noise will often render portions of tape recordings unintelligible in such settings, but these segments alone do not require that all the recordings be excluded from evidence. Rather, the recordings must be considered as a whole to determine their their trustworthiness. In this case, despite the incomprehensible portions on some of the tapes, taken as a whole we believe that the tape recordings were sufficiently comprehensible to allow their admission into evidence. The district court, therefore, did not abuse its discretion in permitting the jury to hear the tape recordings.

## III. Admissibility of Entrapment Evidence

■ At trial, appellant Coldiron attempted to introduce testimony of United States Congressman Carrol Hubbard pertaining to his entrapment defense. Essentially, Congressman Hubbard's proffered testimony would have dealt with attempts by agents of the Federal Bureau of Investigation, in March of 1979, to persuade Hubbard to enlist Coldiron in an investigation of the then Kentucky Governor and Coldiron's old friend, Julian Carroll. According to Coldiron, this testimony was relevant to show a motive for the FBI to entrap him in the present case; the government needed the pending federal charges in this case as leverage to induce Coldiron into aiding the government in their investigation of Governor Carroll.[6]

We do not believe the district court abused its discretion, *see, e.g., Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561, 566 (10th Cir.1978); *United States v. Coast of Maine Lobster Co., Inc.,* 557 F.2d 905, 908 (1st Cir.), *cert. denied,* 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977), in concluding that Congressman Hubbard's testimony was irrelevant. The conversations between Congressman Hubbard and the FBI agents took place approximately seven months after the conspiracy at issue had been formed. Thus, even assuming that the FBI in March of 1979 wanted to obtain Coldiron's cooperation, this testimony is not in any way probative of the motive of the FBI agents in setting up this undercover operation in July of 1978. *See* Fed.R. Evid. 401. Moreover, no evidence was introduced establishing that any FBI agent participated in both setting up the undercover operation in question in July 1978 and arranging the investigation of Governor Carroll.[7] In addition, the principal issue in an entrapment defense is whether the defendant was predisposed to commit

---

**5.** The district court judge held a full day hearing to determine whether the tape recordings met the standard set forth in our prior opinion in this case, *United States v. Robinson,* 707 F.2d 872, 876 (6th Cir.1983).

**6.** The record before this Court is unclear as to whether appellant Coldiron invoked properly the entrapment defense by admitting all the elements of the offenses with which he was charged. *See, e.g., United States v. Whitley,* 734 F.2d 1129, 1138–39 (6th Cir.1984); *United States v. Bryant,* 716 F.2d 1091, 1094 (6th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1006, 79

L.Ed.2d 238 (1984). Due to our disposition of this issue, however, we will assume that Coldiron raised properly the defense.

**7.** Coldiron also maintains that Congressman Hubbard's testimony was admissible to impeach Agent Saylor's assertion at trial that Coldiron initiated the discussions which led to his joining the conspiracy; according to Coldiron, Hubbard's testimony establishes a possible motive for Saylor to have first contacted Coldiron. For the above-stated reasons, we similarly reject this argument.

the offense. *E.g., United States v. Russell,* 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973); *Sherman v. United States,* 356 U.S. 369, 373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958); *Sorrells v. United States,* 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932); *United States v. Lasuita,* 752 F.2d 249, 252–53 (6th Cir.1985). In our view, the government's motive is irrelevant to this issue, *see* Fed.R.Evid. 401, because even assuming that the government wanted to entrap Coldiron, this motive would not affect Coldiron's "readiness and willingness" to commit the crime, *United States v. Eddings,* 478 F.2d 67, 72 n. 1 (6th Cir.1973). The district court, accordingly, did not abuse its discretion in excluding Congressman Hubbard's testimony.

## IV. Admissibility of Ms. Wells' testimony

 Appellant Cornett argues that the district court committed error in permitting his former wife, Gretta Wells, to testify. Ms. Wells testified that during her marriage to Judge Cornett she found in a bureau drawer a piece of paper which appeared to be an unexecuted bill of sale transferring Ann's Liquor Store to her. Upon confronting her then husband Cornett with the document, Ms. Wells stated that he tore it up. Cornett asserts that this evidence was admitted in derogation of the confidential marital communications privilege.[8]

 Confidential communications between spouses made during the marriage are presumptively privileged. *E.g., Trammel v. United States,* 445 U.S. 40, 51, 100

S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *Blau v. United States,* 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951); *United States v. Sims,* 755 F.2d 1239, 1241 (6th Cir.1985); *United States v. Klayer,* 707 F.2d 892, 894 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983). This privilege, however, applies only to conduct and expressions intended to be a communication. *E.g., Pereira v. United States,* 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1934); *United States v. Ferris,* 719 F.2d 1405, 1408 (9th Cir.1983); *United States v. McCown,* 711 F.2d 1441, 1452 (9th Cir.1983); *United States v. Smith,* 533 F.2d 1077, 1079 (8th Cir.1976) (per curiam). In the present case, Ms. Wells testified only as to acts—not communications. The finding of the alleged unexecuted bill of sale carried no communicative connotations. Similarly, the mere act of Judge Cornett tearing up the document by itself does not rise to the level of a communication. Therefore, the district court permitted properly Ms. Wells to testify as to these acts.

## V. Sufficiency of the Evidence

 Judge Cornett also attacks the sufficiency of the evidence supporting his conspiracy conviction. Judge Cornett asserts that, as he interpreted Kentucky law at the time of the relevant events, the ABC had complete discretion in determining whether contraband liquor was destroyed or sold and that a district court judge was obligated to draw up whatever orders the local ABC agent requested. Consequently, since Agent Saylor was the only ABC agent in

---

**8.** Appellant Cornett initially argues that Ms. Wells' testimony was irrelevant, and, even if relevant, its probative value was substantially outweighed by its prejudice. Ms. Wells' testimony was relevant if it had a tendency to make an issue of consequence to the action more likely than not. Fed.R.Evid. 401. Clearly, evidence tending to establish that Judge Cornett had an ownership interest in Ann's Liquors would be relevant as tending to show that he had a motive for entering into the conspiracy. In addition, Ms. Wells only testified to rebut Judge Cornett's statements that he did not have a ownership interest in Ann's Liquors and that he never saw or heard of a bill of sale transferring

Ann's Liquors to his former wife. Thus, we conclude that the district court did not abuse its discretion in holding Ms. Wells' testimony relevant. *See e.g., Wilson v. St. Louis-San Francisco Ry. Co.,* 673 F.2d 1152, 1155 (10th Cir.1982). Further, viewing Ms. Wells' testimony with the maximum probative value possible and minimizing its prejudice, *see, e.g., United States v. Zipkin,* 729 F.2d 384, 389 (6th Cir.1984); *United States v. Clifford,* 704 F.2d 86, 89 (3d Cir.1983); *United States v. Brady,* 595 F.2d 359, 361 (6th Cir.), *cert. denied,* 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979), we conclude that the district court was well within its discretion in admitting the testimony under Fed.R.Evid. 403.

Harlan County, Judge Cornett believed that he was required by law to draw up any orders which Agent Saylor requested.[9]

The burden at trial was on the government to prove beyond a reasonable doubt that Judge Cornett participated knowingly in the conspiracy. *E.g., United States v. Jannotti,* 729 F.2d 213, 226 (3rd Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *United States v. Kimble,* 719 F.2d 1253, 1256–57 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984); *see also United States v. Bibby,* 752 F.2d 1116, 1124 (6th Cir.1985) (an essential part of any conspiracy is that the defendant knew of the conspiracy's main objective). The government, however, may establish such knowing participation by declarations of the co-conspirators or acts of the defendant. *E.g., United States v. Kopituk,* 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 300 (1983); *United States v. Sutton,* 642 F.2d 1001, 1020 (6th Cir.1980) (en banc), *cert. denied,* 453 U.S. 912, 101 S.Ct. 912, 69 L.Ed.2d 995 (1981). Further, a jury verdict must be upheld if viewing the evidence in the light most favorable to the government substantial competent evidence supports the verdict. *E.g., Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

We believe that the government presented sufficient competent evidence for a reasonable juror to conclude beyond a reasonable doubt that Judge Cornett participated knowingly in the scheme. Defendant Coldiron on numerous occasions in the tape recordings between himself and Agent Saylor referred to Judge Cornett's participation in the conspiracy. In fact, Coldiron once called Agent Saylor from the courthouse in which Judge Cornett's chambers was located. Defendant Robinson also implicated Judge Cornett by his statements on the tape recordings. Finally, the conduct of Judge Cornett was consistent with the statements of his co-conspirators. For example, Judge Cornett once told Saylor to sell about 200 of the 300 cases of liquor he entrusted to Saylor on behalf of the State to Ann's Liquors. If Judge Cornett believed that the ABC determined whether the alcohol should be destroyed or sold, his statement ordering Agent Saylor to sell 200 cases of alcohol is inconsistent with such a belief. Also, Judge Cornett prepared orders both mandating Agent Saylor to sell the confiscated liquor and requiring Agent Saylor to destroy the same liquor. Again, Judge Cornett's view of the law did not require him to fill out conflicting orders. Based upon the statements of Coldiron and Robinson and Judge Cornett's conduct, we believe that the government introduced sufficient competent evidence to support the jury's determination that Judge

**9.** Judge Cornett's interpretation of Kentucky law was erroneous. Generally, under Kentucky law applicable at the time of the relevant transactions, upon conviction of a person for possessing contraband liquor seized in a dry county a district court judge was required to enter an order vesting title in the ABC. Ky.Rev.Stat.Ann. § 244.190 (Baldwin 1980). The district court judge was further obligated to enter an order requiring the ABC or its representative to sell the confiscated liquor. Ky.Rev.Stat.Ann. § 242.-380(2) (Baldwin 1980). Finally, the ABC was obligated to sell the liquor and distribute one-half of the proceeds to the county where the seizure occurred and the other half to the state treasury. Ky.Rev.Stat.Ann. §§ 242.380(2) & 244.195(2) (Baldwin 1980). Thus, contrary to Judge Cornett's belief, a district court judge was required to fill out two orders after a person was convicted of possessing illegal alcohol in a dry county: an order vesting title in the ABC and an order requiring the ABC to sell the contraband alcohol and distribute the proceeds pursuant to Section 244.195(2). Nevertheless, since an honest mistake on the part of Judge Cornett as to a district court judge's obligations under the applicable law could suffice to negate the requisite intent, we will assume that his testimony at trial reflected accurately his view of the law.

The Kentucky legislature has effective July 13, 1984 completely revamped this procedure. Under the present law, the district court judge is required to issue an order of destruction for the contraband liquor, Ky.Rev.Stat.Ann. § 244.190 (Baldwin Supp.1984), and the county sheriff is required to carry out the destruction order, Ky. Rev.Stat.Ann. § 244.195(2) (Baldwin Supp. 1984).

Cornett participated knowingly in the conspiracy.

## VI. Outrageous Police Conduct

██ Appellant Cornett's final contention is that the conduct of the police in this case violated the due process clause of the Fourteenth Amendment. Specifically, Cornett notes that Agent Saylor's cooperation was essential to carry out the conspiracy and alleges that Agent Saylor failed to turn over all the money he received in connection with the scheme to the Kentucky Alcohol Beverage Control Board. Four factors are considered in determining whether the conduct of police officers is so outrageous as to violate due process: the need for the type of police conduct, the impetus for the scheme, the control the government exerted over the criminal enterprise, and the impact of the police activity on the commission of the crime. *E.g., United States v. Norton,* 700 F.2d 1072, 1075 (6th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *United States v. Brown,* 635 F.2d 1207, 1211–13 (6th Cir. 1980).

██ In considering the need for police undercover activities, the Supreme Court has repeatedly emphasized that the police may use artifice and stratagem. *E.g., United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *Sorrells v. United States,* 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932); *accord United States v. Brown,* 635 F.2d 1207, 1212 (6th Cir.1980). Clearly, the use of an undercover agent to investigate the convert type of conspiracy presented by this case was warranted since from the court records no wrongdoing could be ascertained. Next, Agent Saylor testified that Coldiron initiated the discussions which led to his joining the conspiracy; hence, the idea for the criminal scheme did not originate with the government. However, since Agent Saylor's active cooperation was essential to the functioning of the conspiracy—he was the only ABC Agent in Harlan County—the government did to an extent control the conspiracy.

acy. Nevertheless, the mere supplying of a crucial ingredient or means to commit a crime by itself does not violate due process. *See Hampton v. United States,* 425 U.S. 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976) (Rehnquist, J., plurality opinion); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Norton,* 700 F.2d 1072, 1076 (6th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983); *United States v. Leja,* 563 F.2d 244 (6th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978). Further, Agent Saylor testified that he merely followed the instructions of Coldiron and Cornett.

██ The appellants also allege that Saylor failed to turn over approximately $699.00 of the money he received in connection with the scheme to the ABC and that this failure may have violated Kentucky law. *See* Ky.Rev.Stat.Ann. § 514.070(1)(a) (Baldwin 1984) (Theft by failure to make required disposition of property). Of course, we do not in any way condone the alleged failure of Agent Saylor to turn over the proceeds. Nonetheless, even assuming that Agent Saylor did violate Kentucky law, this conduct was only collateral to the actual conspiracy; the violation was unconnected to the acts which the defendants are charged with in this case. *See United States v. Brown,* 635 F.2d 1207, 1213 (6th Cir.1980); *United States v. Spivey,* 508 F.2d 146, 149 (10th Cir.), *cert. denied,* 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). We do not believe, therefore, that Agent Saylor's alleged withholding of the bribe money was so interrelated to the acts of the defendants as to require our overturning the defendants' convictions. Accordingly, after carefully considering each of the four factors, we conclude that the conduct of Agent Saylor and the government was not so intertwined with the conspiracy or so outrageous as to violate due process. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); *United States v. Leja,* 563 F.2d 244, 246–47 (6th Cir.1977), *cert. denied,* 434

U.S. 1074, 98 S.Ct. 1263, 55 L.Ed.2d 780 (1978); *United States v. Archer,* 486 F.2d 670, 676–77 (2d Cir.1973).

VII. Conclusion

In light of our determinations that the defendants' conduct had a sufficient impact upon interstate commerce for purposes of Section 1962(c), that the district court resolved properly the evidentiary disputes, that the jury was presented with sufficient competent evidence to find that Judge Cornett participated knowingly in the conspiracy, and, finally, that the conduct of the police in this case did not violate the due process clause of the Fourteenth Amendment, the convictions are affirmed.