889 F.2d 1089
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Emory HARRIS, Jr. (88-4172
and Larry Harris (88-4173), Defendants-Appellants.
 Nos. 88-4172, 88-4173.
 United States Court of Appeals, Sixth Circuit.
 Nov. 22, 1989.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges and LAWRENCE P. ZATKOFF, District Judge.*
 PER CURIAM.
 
 
 1
 Larry Harris (Larry) and Emory Harris, Jr. (Emory) appeal their convictions for conspiracy, between December 1987 and May 1988, to possess with intent to distribute in excess of five hundred grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 841(b)(1)(B)(ii). They also appeal their conviction for attempting to possess with intent to distribute in excess of five hundred grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 21 U.S.C. Sec. 841(b)(1)(B)(ii).
 
 
 2
 Emory further appeals his conviction for use of a communication facility (the telephone) to facilitate the commission of a drug felony, in violation of 21 U.S.C. Sec. 843(b).
 
 
 3
 Both appellants raise a number of arguments on appeal. Larry contends that tapes of telephone conversations and meetings involving him, his brother, and others, and transcripts of these tapes, should not have been submitted to the jury. Larry argues that comments made by Emory about Larry's involvement in the conspiracy should not have been presented to the jury. On these two claims, he requests a new trial.
 
 
 4
 Larry states that insufficient evidence existed to convict him beyond a reasonable doubt. Larry further disputes the District Court's sentencing guideline determination in his case.
 
 
 5
 Emory claims that he was entrapped by a government informant and that his convictions for conspiracy, attempted possession, and use of a communication facility to commit a drug felony should therefore be reversed.
 
 
 6
 We find no error in any of these rulings, convictions or sentencing determinations, and we affirm.
 
 
 7
 * In December 1987, Ron Roy met Larry Harris in Lawrenceburg, Indiana; Larry wanted Roy to supply cocaine to him on credit. Several weeks later, Larry introduced Roy to his brother, Emory Harris, Jr.
 
 
 8
 In late December 1987 or early January 1988, Larry and Emory met with Roy at a Cincinnati videotape store operated by Roy; both Larry and Emory sought to purchase cocaine and secure a future supply of it. Larry and Emory were partners in the transactions. A few weeks later, Roy again met in Lawrenceburg with Larry and Emory, who were joined by Joseph Stokes. Roy sold one ounce of cocaine each to Larry and Emory.
 
 
 9
 Around January 1988, Emory told Stokes that he and Larry were selling cocaine; Emory obtained a beeper for Larry so that Larry could sell cocaine. Stokes observed Emory cook an ounce of cocaine into crack.
 
 
 10
 On February 19, 1988, Roy was arrested for selling an ounce of cocaine. Roy agreed to cooperate with federal law enforcement officials in exchange for immunity. He was instructed in March 1988 to maintain contact with Larry and Emory and to document telephone calls and conversations with them; both Larry and Emory telephoned Roy often.
 
 
 11
 On April 22, 1988, Roy placed a consensually monitored telephone call to Emory. Roy told him that he was in Palm Beach, Florida, and would be bringing back cocaine. Roy testified that, on or about May 7, Emory telephoned Roy in an untaped conversation and told Roy that he and Larry were trying to raise money to purchase a kilogram of cocaine; They also mentioned the possibility of purchasing a second kilogram with a stolen car.
 
 
 12
 Roy and Emory had taped conversations about this possible cocaine purchase on May 8 and May 9. In these conversations, Emory broached the possibility of obtaining cocaine on credit and mentioned that he was getting two ounces of cocaine every other day from his supplier in Cleveland. On May 13, 1988, Roy told Larry that he was interested in trading a second kilogram of cocaine for a car. On May 18, 1988, Roy spoke in a taped conversation to Emory about the sale of one kilogram of cocaine. Emory said that he had spoken to Larry about this sale.
 
 
 13
 On May 19, Emory called Roy and told him that he and Larry were coming to Cincinnati with $17,000 to purchase the one kilogram of cocaine. About this time, Emory contacted Stokes and informed him that he and Larry did not have the necessary money; Stokes agreed to invest $1,000 in exchange for two ounces of the cocaine. Emory, Larry, Stokes, and Stokes's girlfriend showed up at Roy's videotape store that day. Roy was wearing a transmitter during their meeting. Later that day, undercover officer Michael Horton arrived at Roy's store and was introduced to Emory by Roy. Emory told Horton that, after this particular deal, he would like to purchase two kilograms a month. Emory displayed $16,525 to Horton, and Emory, Larry, and Stokes were arrested.
 
 
 14
 On June 15, 1988, Emory and Larry were indicted for conspiracy to possess with intent to distribute and attempted possession with intent to distribute cocaine. Emory was also indicted for using of the telephone to commit a drug felony.
 
 
 15
 On June 29, 1988, both Emory and Larry pleaded not guilty to all counts. On August 23, 1988, a joint jury trial began. At trial, four tape-recorded conversations were introduced into evidence, over the objection of Emory and Larry. Larry also objected to admission of the taped conversations between Emory and Roy about his involvement in the alleged conspiracy on that grounds that such conversations constituted hearsay. Emory also contended that he was entrapped by Roy in the arranged May 19 meeting. On August 26, Larry and Emory were found guilty on every count.
 
 II
 
 16
 The government proposed to use as evidence taped conversations among, at different times, Emory, Larry, Roy, and Stokes. At a pretrial hearing, the court found that incomprehensible portions of the tape were not so substantial as to render the whole untrustworthy. See United States v. Robinson, 763 F.2d 778 (6th Cir.1985). The tapes were then admitted into evidence.
 
 
 17
 Larry contends that the trial court's admission of these taped conversations was prejudicial, and requests a new trial. In particular, he claims that inaudible portions on each tape, especially the tape of May 19 which contains his voice, renders it untrustworthy.
 
 
 18
 We hold that the trial court did not abuse its discretion in finding the tapes to be sufficiently comprehensible as to be trustworthy. Thus, we refuse to grant a new trial on this ground.
 
 III
 
 19
 In addition to allowing the jurors to listen to the taped conversations, the court presented them with transcripts prepared by the government. Larry asserts that the transcripts are not accurate renderings of the conversations; that no specific determination was made as to whether the transcripts were accurate; that he was not permitted to submit his own transcripts; and that the government did not properly authenticate the transcripts. Larry contends that the transcripts prejudiced the jury. See United States v. Robinson, 763 F.2d 778 (6th Cir.1987). He therefore requests a new trial on this ground.
 
 
 20
 The record demonstrates, however, that the transcripts were authenticated at trial by their transcriber, Officer Horton. The transcripts were not admitted into evidence and the jury was charged that its verdict must rest on what it hears on the tapes and not what it reads in the transcripts. Further, at oral argument, Larry admitted that he did not object to their use at trial or offer alternative transcripts.
 
 
 21
 We find no error in the procedure used to authenticate the transcripts and no abuse of discretion by the court in allowing the jury to read them. The jury was not impermissibly prejudiced. Thus, we refuse to grant a new trial on this basis.
 
 IV
 
 22
 A number of Emory's statements in his taped telephone conversations were admitted against Larry to prove that Larry was a part of the conspiracy. Under Federal Rule of Evidence 801(d)(2)(E), a co-conspirator's statements may be admitted against a conspirator if they were made during the course and in furtherance of the conspiracy. Prior to such statements being admitted at trial, however, the government has to prove by a preponderance of the evidence that a conspiracy existed. United States v. Vinson, 606 F.2d 149 (6th Cir.), cert. denied, 444 U.S. 1074 (1980).
 
 
 23
 In this case, the trial court found that the government had met its burden. United States v. Howard, 752 F.2d 220 (6th Cir.1985). Whether such a burden has been met is solely within the discretion of the trial court. Bourjaily v. United States, 483 U.S. 171 (1987). We hold that the trial court did not abuse this discretion. We therefore refuse to grant a new trial on this ground.
 
 V
 
 24
 Larry claims that there was insufficient evidence presented by the prosecution to prove him guilty of conspiracy to possess with intent to distribute and attempted possession with intent to distribute beyond a reasonable doubt. Mullaney v. Wilbur, 421 U.S. 684 (1975). He therefore requests that this court reverse his conviction. We find this argument to be without merit, since evidence supports Larry's involvement in cocaine purchases in late December 1987, which is within the period of the conspiracy.
 
 
 25
 The jury rejected defendant's theory that there were multiple conspiracies and Larry was not involved in a separate conspiracy beginning in December 1987 and ending before May 1988. Evidence supports its rejection of this theory and we affirm its verdict. Accordingly, evidence of Larry's involvement in the December 1987 purchases, in conjunction with evidence concerning his role in the May 1988 transaction, provides sufficient evidence for a jury to convict.
 
 VI
 
 26
 The presentence report established a base offense level of 28 for Larry based on his involvement with three kilograms of cocaine. U.S.S.G. Sec. 2D1.1(a)(3). Larry asserts that, at most, he was involved with three ounces (the amount he directly purchased in late 1987). Thus, his base offense level should be 16. Ibid.
 
 
 27
 We have found that evidence supported Larry's conviction for the conspiracy and attempted possession of cocaine between December 1987 and May 1988. The conspiracy and attempted purchase involved three kilograms of cocaine. Thus, we find no error in a base offense level for Larry which considered three kilograms.
 
 
 28
 Two points were added to Larry's level because Stokes's girlfriend had a loaded gun in her purse. Larry contends that he did not know she had a gun. Further, he asserts that the gun played no role in the conspiracy.
 
 
 29
 The plain language of the Sentencing Guidelines, however, supports this two point addition: "[i]f a firearm ... was possessed during commission of the offense, increase by 2 levels." U.S.S.G. Sec. 2D1.1(b)(1). The commentary to this provision provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. Sec. 2D1.1, comment. (n. 3). We do not find the connection improbable in this case; the gun could have been used at any time during the sale on May 19, 1988, and, in any event, bespoke preparation and gave the participants added confidence. We find no error in this increase.
 
 
 30
 Larry contends that four points should have been deducted from his base offense level because of his minor role in the conspiracy. U.S.S.G. Sec. 3B1.2. The trial court had discretion to find that Larry did not play a minor role. Given the evidence in the record, the trial court did not abuse this discretion in refusing to reduce his base offense level on this ground. Thus, the district court committed no error. We affirm the sentence.
 
 VII
 
 31
 Emory argues that he was entrapped into buying the cocaine. He contends that, to rebut a charge of entrapment, the government has to show a predisposition on his part to engage in the specific crime for which he was charged. United States v. Hairrel, 521 F.2d 1264 (6th Cir.1975), cert. denied, 423 U.S. 1035 (1975). Emory contends that the government must demonstrate that he had a predisposition to break the law "before he received the opportunity afforded by government agents." United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984).
 
 
 32
 Emory argues that, prior to his contact with Roy (who, Emory claims, was a government agent), he dealt in only a few ounces of cocaine. It was Roy who induced him to buy larger quantities. Thus, Emory argues that he had a predisposition to purchase only small quantities of cocaine; he was entrapped into buying the larger quantities at issue here.
 
 
 33
 We find this argument to be without merit. Evidence at trial demonstrated that Emory had a well-established predisposition to purchase cocaine; the amount he purchased was limited only by his financial resources. We find it irrelevant that he wanted to purchase larger quantities only when the financial terms of the purchase were sufficiently favorable. Emory certainly did not lack the predisposition to buy larger amounts of cocaine in the past, just the means. Roy's actions did not affect Emory's buying habits.
 
 
 34
 Emory further argues that, since he was entrapped, he cannot be guilty of violating 21 U.S.C. Sec. 843(b), commission of a felony by a communication facility. Since he did not commit the underlying felony because he was entrapped, Emory argues, he cannot be guilty of this offense. Finding that Emory was not entrapped, it follows that this argument is without merit. Thus, Emory's conviction is affirmed.
 
 VIII
 
 35
 Finding no error in any of the issues raised on appeal, we affirm the convictions and sentences of Larry Harris and Emory Harris, Jr.
 
 
 
 *
 The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation