NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0334n.06

**No. 19-6176**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| JONATHAN EDWARD WHITE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  MOORE, SUTTON, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jonathan White gave an undercover law enforcement agent a makeshift explosive device that he created.  Afterwards, the government charged him with various offenses related to unlawfully making, possessing, and transferring a firearm.[1]  White pursued an entrapment defense, and to support it, he wanted to present evidence concerning (1) the genesis of the government's investigation of him and (2) his grievances against government officials.  The district court, however, excluded the evidence as irrelevant.  The jury then convicted White on each count, and the district court entered judgment against him.  On appeal, defendant argues that the district court's exclusion of his proposed evidence violated his constitutional right to a

---

[1] 26 U.S.C. § 5845(a) defines firearms to include "destructive device[s]."  Further, the statutory definition of destructive devices encompasses "any explosive . . . bomb."  26 U.S.C. § 5845(f).  Accordingly, "[a] pipe bomb is a firearm under the statute." *United States v. Bidlack*, No. 79-5310, 1980 U.S. App. LEXIS 15434, at *5 (6th Cir. July 24, 1980).

meaningful opportunity to present a complete defense. For the reasons expressed below, we disagree and affirm.

I.

Vance Dennis—an assistant district attorney for Tennessee's 24th Judicial District—orally requested that the Tennessee Bureau of Investigations (the Bureau) investigate White. The Bureau agreed and sent two agents to a property adjacent to White's to conduct surveillance. One of the agents, Joseph Hudgins, "was posing as [an] electrical contractor" and appearing to "work[ ] on flood light[s]." That afternoon, Hudgins and White struck up a conversation.

Eventually, Hudgins "b[r]ought up . . . having an issue with beaver dams at a family farm," and discussed potentially shooting the beavers to see if White would mention explosive devices as a way to destroy the dams. After more discussion, White gave the agent an explosive device made from firecrackers, gun powder, a candle, an end cap, and duct tape. Eventually, White was arrested.

The United States indicted White for several firearm offenses that arose out of his manufacture, possession, and transfer of the explosive device, commonly known as a pipe bomb. Before trial, defendant issued a subpoena to Assistant District Attorney Dennis. White sought to have Dennis testify to the origins of the investigation. According to defendant, that testimony would have been relevant to his entrapment defense. The State of Tennessee moved to quash the subpoena. The district court granted the motion, concluding that Dennis's proposed testimony was irrelevant.

During trial, defendant's attorney told the district court that he anticipated defendant testifying—in support of his entrapment defense—about various grievances he had filed against government officials. The district court ruled that White was not permitted to present his grievance evidence because it was not relevant to his entrapment defense.

The jury found defendant guilty on all counts in the indictment. The district court sentenced White to twenty months of imprisonment on each count, to be served concurrently, followed by three years of supervised release. Defendant timely appeals.

## II.

We review interpretations of the Constitution de novo. *See United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). And "we review all challenges to district court evidentiary rulings, including constitutional challenges, under the abuse of discretion standard." *Id.* "[T]he abuse of discretion standard is not at odds with de novo interpretation of the Constitution inasmuch as [the] district court does not have the discretion to rest its evidentiary decisions on incorrect interpretations of the Constitution." *Id.* (emphasis omitted). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 502 (6th Cir. 2017) (en banc).

## III.

### A.

Defendant contends that the district court denied him his right to "a meaningful opportunity to present a complete defense" by excluding proposed evidence. *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). However, "the Supreme Court has made it perfectly clear that the right to present a 'complete'

defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions." *Id.* "A defendant 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

Defendant claims that the district court abused its discretion by improperly applying the law when it excluded evidence that he wanted to use for his entrapment defense as irrelevant. The initial question, therefore, is whether the district court misapplied the Federal Rules of Evidence and therefore abused its discretion by excluding the proposed evidence as irrelevant. As we explain below, we hold that it did not.

B.

"A valid entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002); *see also Mathews v. United States*, 485 U.S. 58, 63 (1988).

An improper inducement occurs when the government "repeated[ly] and persistent[ly] solicit[s]" a person to commit a crime. *Sorrells v. United States*, 287 U.S. 435, 441 (1932); *see also United States v. Dixon*, 396 F. App'x 183, 186 (6th Cir. 2010) ("An 'inducement' consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." (quoting *United States v. Gendron*, 18 F.3d 955, 961 (1st Cir. 1994))). The predisposition inquiry involves assessing whether a defendant was "inclin[ed] to commit the crime with which he is charged." *United States v. Kussmaul*, 987 F.2d 345, 349 (6th Cir. 1993); *Predisposition*, *Black's Law Dictionary* (11th ed. 2019) ("A person's inclination to engage in a particular activity; esp., an

inclination that vitiates a criminal defendant's claim of entrapment."). To determine whether the defendant was predisposed to commit the charged crimes, the following factors are pertinent:

> (1) the character or reputation of the defendant; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense but was overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.

*United States v. Nelson*, 922 F.2d 311, 317 (6th Cir. 1990).

## IV.

### A.

Defendant contends that the district court abused its discretion when it excluded his grievance evidence. We disagree.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *United States v. Chalhoub*, 946 F.3d 897, 905 (6th Cir. 2020). The fact of consequence here is whether defendant was predisposed to commit the crimes with which he was charged. *See United States v. Clark*, 957 F.2d 248, 250 (6th Cir. 1992) ("The question of entrapment is generally one of fact . . . ."). Therefore, for the grievance evidence to be relevant, it would have to have a tendency to make it more or less probable that defendant was inclined to commit the offenses with which he was charged. *Kussmaul*, 987 F.2d at 349 (observing that in the entrapment context, predisposition is the defendant's "inclination to commit the crime with which he is charged"). White's criticisms of government officials, however, say nothing about whether he was more or less likely to be inclined to build, possess, or transfer pipe bombs. Thus, the grievance evidence was irrelevant, and the district court did not abuse its discretion by excluding it.

White argues that the grievance evidence bears on the character and reputation factor. But even if there were some relationship between defendant's criticisms of government officials and his character, he has not explained how that relationship, in turn, suggests that it is more or less likely that he was inclined to commit the crimes with which he was charged. That lack of a causal connection renders defendant's argument unpersuasive.

B.

Defendant also contends that the district court abused its discretion when it excluded the investigation evidence. We are not persuaded.

For the investigation evidence to be relevant, it would have to have a tendency to make it more or less probable that White was inclined to commit the offenses with which he was charged. *Id.* The reason the government began its investigation of White, however, is unrelated to White's inclination to build, possess, or transfer pipe bombs; therefore, it is irrelevant. *Cf. United States v. Robinson*, 763 F.2d 778, 783 (6th Cir. 1985) ("In our view, the government's motive is irrelevant to [the predisposition] issue . . . because even assuming that the government wanted to entrap [defendant], this motive would not affect [defendant's] 'readiness and willingness' to commit the crime." (citations omitted)). White argues that the investigation evidence is pertinent to the nature-of-the-inducement factor, but his arguments are unavailing.

The nature-of-the-inducement factor concerns the means the government used to persuade its target to violate the law. *See United States v. Barger*, 931 F.2d 359, 361, 367 (6th Cir. 1991) (observing that the "nature of the government's inducement was" how the government encouraged its target to violate the law, i.e., an FBI informant told the target about a fictional plan "to blow up the Outlaws[ ] [Motorcycle Club's] clubhouse"); *United States v. Wilson*, 653 F. App'x 433, 439–40 (6th Cir. 2016) (analyzing the nature-of-the-inducement factor by considering the methods the

government used to encourage the target to break the law). White, however, does not adequately connect the investigation evidence to how the government attempted to persuade him to commit crimes. First, he suggests that "the proffered evidence might have helped explain" why the agent was "investigating threats about the use of explosive devices." But the government's motive for investigating White would not have revealed anything about the means the government used to persuade him to break the law; therefore, it is not a pathway to relevance. Second, defendant claims that the "[t]estimony regarding the request for investigation could have helped explain why Hudgins chose a story of sympathy due to beaver dam damage to induce Mr. White." Why the government's agent chose one type of story is not a germane question. Whether and how the agent induced a criminal act are pertinent questions, but the investigation evidence would not have shed light on them. Accordingly, the district court properly applied the law by excluding the irrelevant investigation evidence, and we discern no abuse of discretion.

## V.

A criminal defendant has a constitutional right to "a meaningful opportunity to present a complete defense." *Rockwell*, 341 F.3d at 512 (quoting *Crane*, 476 U.S. at 690). But that does not confer "an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence." *Id.* (quoting *Taylor*, 484 U.S. at 410). Here, White's desired evidence was inadmissible (because it was irrelevant), so the district court did not violate his constitutional rights by excluding it.

## VI.

For these reasons, we affirm the district court's judgment.

**KAREN NELSON MOORE, Circuit Judge, concurring in the judgment.** I agree with the majority that the district court's evidentiary rulings did not constitute an abuse of discretion. I write separately to note that White's appeal does not fail based on any bright-line rule holding that evidence of the government's motive is, by definition, irrelevant to the entrapment defense. Although the district court did not abuse its discretion in excluding such evidence in this case, I explain below why evidence of the government's improper motive could be relevant to a defendant asserting the entrapment defense.

In most cases, without question, evidence of the government's motive will be irrelevant to an entrapment defense. *See United States v. Webster*, 649 F.2d 346, 351 (5th Cir. 1981) (en banc) ("[I]n the run-of-the-mill entrapment case where no such special circumstances are present, evidence of good faith, motive and reasonableness of the government is . . . of little if any significance and the prejudice will outweigh any probative value."). As the Supreme Court explained in *Hampton v. United States*, 425 U.S. 484 (1976), "We [have] ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct in a case, such as this one, *where the predisposition of the defendant to commit the crime was established*." *Id.* at 488–89 (emphasis added). That the government's motive will usually be irrelevant to the entrapment defense makes sense for two reasons. First, regardless of its motive, the government may not have, in fact, induced the defendant. Second, a defendant's predisposition to commit the offense will usually exist independently from the government's conduct, let alone its motive.

This leaves open, however, the possibility that evidence of the government's motive could theoretically be relevant to an entrapment defense when the defendant's predisposition has *not* been established and there is evidence of improper inducement. *Cf. Rossetti v. United States*, 773 F.3d 322, 331 (1st Cir. 2014) ("[T]he FBI's possible motive to entrap a person is of no moment

in a case such as this one *where there is predisposition and no evidence of improper inducement*.") (emphasis added). Put simply, evidence of the government's improper motive could make it more likely that the government engaged in improper inducement, which itself could make it more likely that the defendant lacked predisposition.

The potential relevance of such evidence is apparent even in White's case, because it involved a dispute over whether he was induced and whether he was predisposed to committing the crime. As to the dispute over inducement, Agent Hudgins testified that after he mentioned problems with a beaver dam, White immediately offered to help him and returned minutes later with a bomb. *See* Appellee Br. at 6. In sharp contrast, White testified that Hudgins repeatedly appealed to White's sympathies by lying about the devastation Hudgins's farm would face if White did not help him, and that White relented only after Hudgins asked him for help four times. *See* Appellant Br. at 3–5. The jury was left to decide whose story to believe. If White had been permitted to introduce compelling evidence of the government's desire to retaliate against him, this could have made it more likely that the government agent overstepped his bounds and unlawfully induced White to commit a crime. There is, of course, a rejoinder to this line of reasoning: Wouldn't Agent Hudgins have been just as likely to overstep his authority and unlawfully induce the crime if he were simply an overzealous agent pursuing legitimate law-enforcement objectives? Why would a retaliatory motive make it more likely that he would unlawfully induce White's commission of the crime? These are fair objections, but a district court could, within its broad discretion, reasonably conclude that an agent motivated by an illicit objective (i.e. retaliation) is more likely to engage in illicit inducement than an agent motivated by a legitimate objective. The opposite conclusion by a district court may be acceptable, too. But no bright-line rule prohibits a district court from concluding that improper motive may make improper

inducement more likely. This means that evidence of the government's motive may be relevant to proving government inducement of the crime.

Moving to lack of predisposition, if White had been able to demonstrate—based in part on evidence of the government's retaliatory motive—that inducement had occurred, this could have made it more likely that he lacked predisposition to commit the crime. This proposition has a clear basis in entrapment doctrine, including in our own caselaw. We have explicitly regarded "the nature of the inducement or persuasion supplied by the Government" as one factor to consider in "determining a defendant's prior disposition." *United States v. McLernon*, 746 F.2d 1098, 1112 (6th Cir. 1984) (quoting *United States v. Kaminski*, 703 F.2d 1004, 1008 (7th Cir. 1983)). As the Eighth Circuit has explained, "[t]he two inquiries are often closely linked, because the need for greater inducement may suggest that the defendant was not predisposed to commit the crime; and conversely, a ready response to minimal inducement indicates criminal predisposition." *United States v. Myers*, 575 F.3d 801, 805 (8th Cir. 2009). Here, for example, if the government had to go to such extreme lengths to persuade White, the jury may have been more likely to conclude that White was not predisposed to committing the crime.

Given that entrapment deals with the government's objective conduct and the defendant's subjective state, evidence of the government's motive may seem irrelevant to this defense on an intuitive level. But relevant evidence "has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence of an improper motive could have a tendency to make improper inducement more probable than it would be without such evidence. And such inducement could make it more probable that the defendant lacked predisposition to commit the crime. Neither the Supreme Court nor this court has deemed evidence of the

government's motive to be irrelevant as a matter of law,[1] and other courts have at least suggested the potential relevance of such evidence. *See, e.g.*, *United States v. Disla*, 358 F. App'x 121, 133 (11th Cir. 2009) ("[T]he district court adequately allowed Disla to present evidence of the government's alleged bias and retaliatory motive in connection with his entrapment defense.").

To be clear, the resolution of this case does not turn on this issue. The district court acted within its discretion in concluding that the evidence that White wished to present would present a confusing "side issue." R. 50 (Trial Tr. I at 54) (Page ID #286). And even if the district court erred in excluding the evidence, its error was harmless in light of ample evidence demonstrating White's predisposition to commit the offense. But it should be emphasized that White's appeal fails for these reasons, not due to any bright-line rule that evidence of the government's improper motive is per se irrelevant to the entrapment defense.

---

[1] The line in *United States v. Robinson*, 763 F.2d 778 (6th Cir. 1985), quoted by the majority, *see* Maj. Op. at 6, does not establish a bright-line rule that, in all cases, evidence of the government's motive must be regarded as irrelevant to entrapment. Since its issuance in 1985, *Robinson* has never been cited in a published decision as having established a bright-line rule excluding evidence of the government's motive as irrelevant to entrapment. Instead, the quoted sentence explains why in *Robinson*'s factual context, the government's motive did not affect the defendant's predisposition. Furthermore, even if one construed *Robinson* as applying more broadly, the panel did not consider the possibility that government motive may make a showing of *inducement*—not lack of predisposition—more likely. *See Robinson*, 763 F.2d at 783 ("[T]he government's motive is irrelevant to this issue [predisposition].").